CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant, vs. CITY OF JANESVILLE, imp., Respondent. SAME, Respondent, vs. SAME, Appellant.

*October 23—November 10, 1908.*

*Railroads: Property: Taxation: Special assessments: Public-service corporations: Special improvements: Assessment by front-foot rule: Constitutional law: Police power.*

1. The principle that the franchises of a public-service corporation, together with the property owned by it which is necessary for its use in order to accomplish the purposes of its existence, constitute an entirety which is not ordinarily subject to division by sale of a part on court or tax process, applies to railroads, but is subject to the exception that such sale and division may be authorized by special legislative authority.

2. Ordinary statutory provisions, merely general in their nature, will not be construed to apply to such property.

3. Ch. 425, Laws of 1903, providing, among other things, that the property of railroad corporations shall be in all respects subject to all special assessments for local improvements in the same manner and to the same extent as the property of individuals, such assessments to be collected by an ordinary action at law, is an express and unambiguous declaration of legislative purpose to subject the property of a railroad to special assessments, although such property is a part of the entirety.

4. Secs. 925—216 to 925—218, Stats. (1898), providing for the assessment for special improvements against adjoining lots at an

even rate not exceeding $2 nor less than twenty-five cents per
linear foot on the whole frontage of each lot, apply to public
sanitary sewers, and are constitutional as a legitimate exercise
of police power.

5. Assessments against adjoining property need not be limited to
benefits received where such assessments are properly made
under the police power.

APPEALS from a judgment of the circuit court for Rock
county: GEORGE GRIMM, Circuit Judge. *Affirmed on plaintiff's appeal; reversed on that of defendant.*

For the plaintiff there was a brief by *Jackson & Jackson,*
attorneys, and *C. H. Van Alstine,* of counsel, and briefs in
reply by *C. H. Van Alstine,* of counsel; and the cause was
argued orally by *A. A. Jackson* and *C. H. Van Alstine.*

*H. L. Maxfield,* city attorney, for the defendant.

WINSLOW, C. J.   The city of *Janesville,* having adopted
those provisions of the general city charter law relating to
the building of sewers (secs. 925—208 to 925—239, Stats.
1898), proceeded to construct sanitary sewers in certain
streets of the city and levy assessments against adjoining
real estate at the uniform rate of forty cents per linear foot
to pay a part of the expense.   The railroad company owns
and operates a railroad running through the city upon a right
of way 100 feet in width, and also owns several tracts of
land adjoining said right of way and fronting on certain of
the streets in which sewers were laid.   Upon one of these
tracts is a freight depot and upon others are warehouses and
other buildings rented by the company to private parties,
which are reached by short spur tracks branching off from
the main line.   The city levied sewer assessments at the uniform rate aforesaid against all of these parcels which fronted
on the line of the sewers outside of the 100-foot right of way.
The company paid the assessments so made against those
parts of such parcels upon which the warehouses were located, but declined to pay the assessments against the freight

depot property and the strips seventeen feet wide upon which the spur tracks were located, and brought this action in equity to set aside the last-named assessments on the ground that such property was not subject to assessment. After trial the court sustained the assessments against the freight depot property and against all but two of the strips on which the spur tracks are situated, but set aside the assessments as to the last-named strips because they were found not to be actually benefited, and each party appealed from that part of the judgment adverse to its contention.

The leading contention made by the plaintiff is that the lands on which its freight depot and spur tracks are situated are not subject to assessment for local improvements, because they are a part of an entirety composed of the whole property, real and personal, of a public-service corporation, and hence are not severable. The general doctrine that the franchises of such a corporation, together with the property owned by it which is necessary for its use in order to accomplish the purposes of its existence, constitute an entirety which is not ordinarily subject to division by sale of a part on court or tax process, is firmly established in this court. *Chicago & N. W. R. Co. v. Forest Co.* 95 Wis. 80, 70 N. W. 77, and cases cited. This principle, however, is subject to the exception that such sale and division may be authorized by special legislative authority. Ordinary statutory provisions, merely general in their nature, will not be construed as intended to apply to such property, but the legislature has full power over the subject, and may by specific provisions accomplish the result. The general principle is well illustrated in the case of *Chicago, M. & St. P. R. Co. v. Milwaukee,* 89 Wis. 506, 62 N. W. 417, where the city had attempted to assess a strip of the right of way of the company for the paving of an adjoining street. It was contended in that case that the provisions of subd. 14, sec. 1038, R. S. 1878 (being the same as subd. 14, sec. 1038, Stats. 1898), exempting railway prop-

erty from general taxation, "except that the same shall be subject to special assessments for local improvements in cities and villages," made the right of way subject to assessment under the general provisions of the city charter authorizing. assessments against adjoining real estate. It was held, however, that the exception in the exemption statute was not an affirmative declaration making railroad property subject to special assessment, but simply confined the exemption to the subject of general taxation, and that the general provisions of the city charter providing for special assessments did not show a legislative intention that a portion of a railroad right of way should be so assessed and severed by sale for nonpayment of the assessment. In the discussion of the question it was said that the principle is established that "such a result cannot be effected under the power of taxation *without express legislative authority,* and that general language in such statutes will not be held to authorize such a result." Since the decision of that case, however, the legislature has in no uncertain terms made express provision for the levying of such assessments against such property. Ch. 425, Laws of 1903, provides, among other things, that the property of railroad corporations "shall be in all respects subject to all special assessments for local improvements in the same manner and to the same extent as the property of individuals." This is an express and unambiguous declaration by the legislature upon a subject over which it has full power, which closes the question. It is instructive, also, to note that by the same law it is provided that such assessments may be collected by ordinary action at law, thus obviating all practical danger of a sale and consequent severance of a part of the corporate property. It must therefore be held that all of the property assessed in the present case was subject to assessment, although it was a part of the entirety.

The second contention of the railroad company is that the assessments are invalid because made for arbitrary sums by

the front-foot rule and not in proportion to benefits actually received. The sections of the general charter law under which they were made (secs. 925—216 to 925—218, Stats. 1898) provide for the making of assessments against adjoining lots at an even rate not exceeding $2 nor less than twenty-five cents per linear foot on the whole frontage of each lot. There are no provisions for the ascertainment of actual benefits nor for the limitation of the assessments to the amount of actual benefits received. So the contention becomes primarily a contention against the validity of the law, and, if the law be valid, the assessments themselves are valid because they were made in accordance with the terms of the law. This court has held that, where assessments for local improvement are required to be made according to the benefits accruing to each parcel, an assessment of a level rate by the front-foot rule, while not necessarily void, will be held invalid, unless it appears that the assessing board has considered the matter and determined that the benefits are in fact proportionate to the frontage of each parcel. *Hayes v. Douglas Co.* 92 Wis. 429, 65 N. W. 482; *Hennessy v. Douglas Co.* 99 Wis. 129, 74 N. W. 983; *Sanderson v. Herman,* 108 Wis. 662, 84 N. W. 890, 85 N. W. 141. These cases, however, have no bearing on the question before us, because the statute before us does not require the assessment to be in proportion to benefits received. The simple question here is whether a law is constitutional which provides for the assessment of a fixed proportion of the cost of a public sanitary sewer against adjoining lots by the front-foot rule.

The decisions upon the general question of the validity of special assessment laws which do not provide for assessments to be made in proportion to the benefits received are very numerous and conflicting. A treatise might easily be written upon the subject, but no attempt will be made to write such a treatise here, as the writer fears that such attempt might result in a collection of words without knowledge which

merely darken counsel. It is well settled that assessments against adjoining property are not limited to benefits received where such assessments are properly made under the police power. Thus the court has held that the entire cost of a side-walk may be properly assessed against the adjoining lot without reference to or ascertainment of actual benefits. *Hennessy v. Douglas Co.* 99 Wis. 129, 74 N. W. 983; *Lisbon Ave. L. Co. v. Lake,* 134 Wis. 470, 113 N. W. 1099. In the last case it was held that, inasmuch as the presence of a defective and dangerous sidewalk constituted a serious public inconvenience and danger, the city might, under the police power, be clothed with the right to build or repair it at once without notice and to charge the entire expense to the abutting lot upon which it stands, regardless of the question of the amount of benefit actually conferred. A defective sidewalk is a menace to the public safety, and its presence in a public street is quite analogous to the presence of a disease-breeding cesspool upon private property, which under well-established principles may be removed by the public authorities and the expense thereof charged to the property if the statute so authorize. The decisions are quite unanimous upon this question, and may be found collated in 2 Cooley, Taxation (3d ed.) 1128, 1129, 1130. Upon the last-named page Judge Cooley proceeds as follows:

"There seems to be no legal impediment to a requirement under the police power that lotowners in cities and villages shall be at the expense of constructing that portion of the public sewer in front of their respective premises,"—citing *Van Wagoner v. Paterson,* 67 N. J. Law, 455, 51 Atl. 922. See, also, *Gleason v. Waukesha Co.* 103 Wis. 225, 79 N. W. 249.

There certainly is no fault in this line of reasoning. The preservation of public health from danger resulting from the accumulation of sewage upon private property in cities is fully as persuasive a justification for the exercise of the police power as the preservation of life and limb from the dangers resulting from defective or snow-covered sidewalks. So far

as this court has spoken on the subject it has sustained the right to make sewerage assessments upon the front-foot rule without regard to the extent of benefits. *Meggett v. Eau Claire,* 81 Wis. 326, 51 N. W. 566. See, also, *Blount v. Janesville,* 31 Wis. 648. The provisions of the general charter in question evidently contemplate that all the property drained by the system shall be assessed at an even rate, so that each parcel shall pay approximately its proportionate share of the cost of what may be called merely a service sewer, while the additional expense of main or trunk sewers, made necessary in order to conduct away the combined output of the minor service sewers, shall be borne by the entire district. If this be, as we hold it is, a legitimate exercise of the police power, there are no constitutional objections, either national or state, which stand in the way. See *French v. Barber A. P. Co.* 181 U. S. 324, 21 Sup. Ct. 625.

It follows from these considerations that the assessments in question should all have been sustained.

*By the Court.*—Those parts of the judgment from which the plaintiff appeals are affirmed, and those parts from which the city appeals are reversed, with directions to enter judgment in accordance with this opinion, the city to recover one bill of costs in this court.